IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | Case No. DNCW1:19CV133 |
| WILLIAM M. FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through the United States Attorney for the Western District of North Carolina, on behalf of its agency, the Farm Service Agency, United States Department of Agriculture, alleges as follows:

1. This is a civil action brought by the United States of America, and jurisdiction of this Court is invoked under the provision of 28 U.S.C. §1345.

2. Defendant William M. Ferguson (hereinafter, Defendant) is a citizen and resident of Haywood County, North Carolina, and more specifically has a mailing address of 925 Max Patch Road, Clyde, North Carolina 28721.

3. Defendant is indebted to the Farm Service Agency, United States Department of Agriculture, as the result of the following Farm Program loan:

| Date | Amount | Interest Rate | Type |
|---|---|---|---|
| June 23, 2014 | $80,000.00 | 2.250% | Operating |

A copy of the Promissory Note (hereinafter, Note) is attached hereto as Exhibit A

and incorporated herein by reference.

4. In order to secure payment of the Note, Defendant executed a Security Agreement covering all crops, farm equipment, livestock and crop poundage allotments more fully described therein, as well as replacements, substitutions, additions and accessions thereto, and perfected the Security Agreement in the Financing Statement as described below:

| Security Agreement Date | Financing Statement Date/Time of Filing | File No. |
|---|---|---|
| June 23, 2014 | 07/07/2014/11:25 A.M. N.C. Secretary of State | 2014006421F |

A copy of the Security Agreement is attached hereto as Exhibit B. A copy of the Financing Statement is attached hereto as Exhibit C.

5. The Note and Security Agreement provide, *inter alia*, that in the event of default in the payment of any installment due under the Note, the entire principal and interest shall become due and payable without notice, at the option of the holder of the Note. The Note and Security Agreement further provide for Plaintiff to make certain advances for the account of the makers of the Note and of Defendant, and for the charging of interest thereon, and that the Note and Security Agreement may be foreclosed with costs of foreclosure to be charged against the proceeds of any sale thereunder.

6. Plaintiff United States of America, by and through its aforesaid officer,

is the owner and holder of the Note.

7. Defendant has failed to make the payment on the Note as required, although due demand has been made upon him to do so. Plaintiff has, therefore, elected and does hereby elect to declare the entire balance of the indebtedness due upon the Note and Security Agreement, together with all amounts due for charges and advances now due and payable. There is now due upon the Note and Security Agreement the principal amount of $39,150.25 with interest of $880.88 accrued as of November 13, 2018, with interest accruing daily after that date in the amount of $2.4134 until paid. An official Affidavit of Indebtedness is attached hereto as Exhibit D and incorporated herein by reference.

8. Pursuant to 28 U.S.C. § 3011, the United States of America is entitled to a surcharge of 10 percent of the amount of the debt as of date of judgment.

WHEREFORE, Plaintiff United States of America prays for relief as follows:

1. For Judgment against William M. Ferguson in the principal amount of $39,150.25 with interest of $880.88 accrued as of November 13, 2018, with interest accruing daily after that date in the amount of $2.4134 until paid, together with present and future costs and disbursements of this action and sale.

2. That such judgment include a surcharge of 10 percent of the amount of the debt as of the date of judgment.

3. That Plaintiff's Security Agreement be foreclosed and that all right, title, and interest of William M. Ferguson or any persons holding by, through, or under them, including any equity or redemption or rights of power, and rights of any junior lienholders, be forever barred in and to the aforesaid personal property.

4. That an Order be issued directing the United States Marshal to enter upon the land of Defendant, or other location, to seize and possess the farm machinery and equipment that serves as collateral for the aforesaid loan.

5. Plaintiff further prays that upon foreclosure and possession, the said premises and farm machinery and equipment be sold by the United States Marshal upon such time, notice, and conditions as the law may prescribe and the Court may require; and out of the proceeds of said sale, Plaintiff be paid the amount thereof on its claim above described.

6. For such other and further relief as this Court deems just and proper.

This the 19th day of April, 2019.

    R. ANDREW MURRAY,
    UNITED STATES ATTORNEY

    **s/Julia K. Wood**
    Assistant United States Attorney
    N.C. State Bar No. 51754
    227 West Trade Street, Suite 1650
    Charlotte, NC 28202
    Phone: (704) 344-6222
    Fax: (704) 227-0248
    julia.wood@usdoj.gov

This form is available electronically.

FSA-2026
(12-05-12)

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

# PROMISSORY NOTE

| 1. Name<br>WILLIAM M. FERGUSON | | 2. State<br>NORTH CAROLINA | 3. County<br>HAYWOOD |
|---|---|---|---|
| 4. Case Number<br>38-044-▇ | 5. Fund Code<br>44 | 6. Loan Number<br>01 | 7. Date<br>JUNE 23, 2014 |
| 8. TYPE OF ASSISTANCE<br>OL-BF-Reg-7YR | | 9. ACTION REQUIRING PROMISSORY NOTE:<br>☒ Initial loan  ☐ Conservation easement  ☐ Deferred payments<br>☐ Consolidation  ☐ Rescheduling  ☐ Debt write down<br>☐ Subsequent loan  ☐ Reamortization | |

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in (a) WAYNESVILLE NC or at such other place as the Government may later designate in writing, the principal sum of (b) EIGHTY THOUSAND AND NO/100------------------------------------ dollars (c) ($ 80,000.00 ), plus interest on the unpaid principal balance at the RATE of (d) TWO AND ONE QUARTER------------------------------------ percent (e) 2.25 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in (a) 7 installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 12,481.00 | 1/1/2015 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and (d) $ 12,481.00 thereafter on the (e) 1ST of each (f) JANUARY until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable (g) 7 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136. (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial WMF  Date 6/23/14

Government Exhibit
A

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial WMF      Date 6/23/14

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**

_William M. Ferguson_      (SEAL)          _6/23/14_
WILLIAM M. FERGUSON                                        DATE

11621 BETSYS GAP ROAD
CLYDE NC 28721

**NOTE:** The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

This form is available electronically.

FSA-2028
(09-03-10)

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Public Burden Statements).

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 1

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, *dated (a)* __June 23__, __2014__, is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **WILLIAM MARQUIS FERGUSON,**

(Debtor), whose mailing address is (c) __11621 BETSYS GAP RD, CLYDE, NC 28721-7378__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a):*

Initial **WMF** Date **6/23/14**

Government
Exhibit
B

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1) Farm or Other Real Estate Owner | (2) Approximate Number of Acres | (3) County and State | (4) Approximate Distance and Direction from Named Town or Other Description |
|---|---|---|---|
|  | 4 |  |  |
| 2782 James Ferguson | 195 | HAYWOOD, NC | Fines Creek Area - 13 miles Northwest of Waynesville |
| 2780 Frances Kiester | 41 | HAYWOOD, NC | Fines Creek Area - 13 miles Northwest of Waynesville |
| 2779 Ferguson Enterprises | 41 | HAYWOOD, NC | Fines Creek Area - 13 miles Northwest of Waynesville |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial _WMF_ Date _6/23/14_

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)*
   NORTH CAROLINA

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Tractor w/ cab | Massey Ferguson | 4335 | | 2004 | 48578 |
| 2 | 1 | Bush Hog | Massey Ferguson | 6 Foot | | 2005 | |
| 3 | 1 | Tobacco Setter | Holland | 1 Row | | | |
| 4 | 1 | Tobacco Setter | Holland | 2 Row | | | |
| 5 | 1 | Chisel Plow | Massey Ferguson | | | 2005 | |
| 6 | 1 | Sprayer | Agri | 50 Gallon | | | |
| 7 | 2 | Disc Harrow | International | 12 Foot and 8 Foot | | | |
| 8 | 1 | Dump Trailer | Cargo Prell Eagle | 14 Foot | | 2003 | |
| 9 | 1 | Stock Trailer | Rollen Brand | 20 Foot | | 1989 | 1H9T3212211057191 |
| 10 | 1 | Flat Bed Trailer | Unknown | 16 Foot | | | 2050351989RST0313 |
| 11 | 1 | Tobacco Trailer | Unknown | 20 Foot | | | |
| 12 | 1 | Tractor w/ 1050 Loader | Massey Ferguson | 263 | | 2002 | K24039 |
| 13 | 1 | Tractor w/ 460 Loader & backhoe attachment | John Deere | 4500 | | 2001 | P151116 |
| 14 | 1 | 2001 Ford Truck | Ford | F-250 | | | |

Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial WMF Date 6/23/14

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

NORTH CAROLINA

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | 26 | Cattle - Beef | Angus | Various | 1,100 | 3-6yr | Orange Tag |
| 2 | 3 | Cattle - Beef - Calves - Heifers | Angus | Various | 200 | <6 mo | |
| 3 | 17 | Cattle - Beef - Calves - Steers | Angus | Various | 200 | <6 mo | |
| 4 | 1 | Cattle - Brdg. - Bulls | Angus | Various | 2,000 | 2 yr | Red Tag |
| 5 | 30 | Cattle - Beef - Cow/Calf- Purchase Money Int | | | | | |

Initial WMF  Date 6/23/14

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial WMF Date 6/23/14

### 4. IT IS FURTHER AGREED THAT:

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

  (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

  (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

  (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly WAIVES the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

Initial _[signature]_　Date _[handwritten]_

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. /s/ William Marquis Ferguson
WILLIAM MARQUIS FERGUSON

6B. (Date) 6/23/14

_____ (Date) _____
Debtor

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.* **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).*

*To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Little, Melissa Wilcox

B. E-MAIL CONTACT AT FILER (optional)
melissa.little@nc.usda.gov

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Melissa Wilcox Little
207 W. Main Street, Room 108
Wilkesboro, NC 28697

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Ferguson | William | Marquis | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 11621 Betsys Gap Rd | Clyde | NC | 28721 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME
United States of America acting through Farm Service Agency

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 89 Thomas Heights Rd | Franklin | NC | 28734 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Attachment

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:
0128

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Government Exhibit C

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

12. ADDITIONAL SPACES FOR ITEM 4(Collateral)

(a) All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance indemnity payments, and all entitlements, benefits, and payments from all state and federal farm programs;
(b)_____ ; and
(c) All proceeds, products, accessions, and security acquired hereafter.

The security interest perfected secures a future advance clause and the security agreement contains an after-acquired property clauses.

Disposition of such collateral is not hereby authorized. This includes any replacements or substitutions.

This includes any replacements or substitutions.



| | | | | North Carolina Farm Service Agency |
|---|---|---|---|---|
| **USDA** United States Department of Agriculture | Farm Production and Conservation | Farm Service Agency | | Farm Loan Programs Division<br>4407 Bland Road, Suite 175<br>Raleigh, North Carolina 27609<br>(919)875-4850 |

## AFFIDAVIT OF INDEBTEDNESS

NAME OF BORROWER: William M. Ferguson

| Loan Code | Note Rate | Date Of Note | Face Amount | Current Amount Outstanding Principal | Interest Accrued Through 11/13/2018 | Interest Daily Accrual Rate | Amount Delinquent |
|---|---|---|---|---|---|---|---|
| LOAN SECURED BY FARM MACHINERY AND EQUIPMENT: | | | | | | | |
| 44-01 | 2.250 | 06/23/2014 | $80,000.00 | $39,150.25 | $880.88 | $2.4134 | $40,031.13 |

### CERTIFICATION

The above account information is correct as of November 13, 2018, and represents an indebtedness that is due and owing to the United States of America through its agency, Farm Service Agency, United States Department of Agriculture. The date of last credit on the account was November 13, 2017. I certify under penalty of perjury that the foregoing is true and correct pursuant to the provisions of Title 28 U.S.C. § 1746.

Date: November 13, 2018

_____
T. DOCK JONES
Farm Loan Specialist
Farm Service Agency
North Carolina State Office

USDA is an equal opportunity provider, employer and lender.

Government
Exhibit
D

Case 1:19-cv-00133    Document 1-4    Filed 04/19/19    Page 1 of 1